**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Automec, Inc., <br><br> Plaintiff, <br><br> v. <br><br> STG Logistics, Inc., <br><br> Defendant. | Civil Action No: 24-728 (SDW) (AME) <br><br> **OPINION** <br><br> September 2, 2025 |

**WIGENTON**, District Judge.

Before this Court are two motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Defendant STG Logistics, Inc. ("STG") seeks partial summary judgment on only the issue of contractual limitation of liability. (D.E. 26-7 ("STG Mot.") at 1.) Plaintiff Automec, Inc. ("Automec") seeks complete summary judgment as to liability and damages. (D.E. 27-1 ("Automec Mot.") at 1.) Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, STG's motion for partial summary judgment is **DENIED**, and Automec's motion for summary judgment is **GRANTED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

This case arises from alleged damage to cargo during shipment from Helsinki, Finland to Automec in Seattle, Washington, United States. (D.E. 26-1 ¶ 1; D.E. 39 ¶ 1; Automec Mot. at 2–3.) Automec engaged ECU Worldwide, a "logistics service provider," for assistance transporting the cargo in the United States. (D.E. 26-1 ¶ 5; D.E. 38 ¶ 8; D.E. 39 ¶ 5; D.E. 41 ¶ 8.) ECU

1

Worldwide then "engaged STG for certain logistics and ground transportation services." (D.E. 38 ¶ 9; D.E. 41 ¶ 9.)

The cargo arrived undamaged at the Port of New York, and STG picked it up. (D.E. 27-2 ¶ 9; D.E. 34 ¶ 9; D.E. 26-1 ¶ 6; D.E. 39 ¶ 6.) STG then brought it to a warehouse in North Bergen, New Jersey. (D.E. 27-2 ¶ 4; D.E. 34 ¶ 4.) A trucker arrived at the warehouse to pick up the cargo on July 28, 2023 and noted that "there was damage to the crate" preventing safe collection of the cargo. (D.E. 27-2 ¶¶ 14–15; D.E. 34 ¶¶ 14–15; D.E. 27-8 at 1.) Automec's freight forwarder notified Automec of the issue. (D.E. 27-2 ¶ 15; D.E. 34 ¶ 15; D.E. 27-8 at 1.) An August 1, 2023 report by Automec's third-party surveyor provides that an "uncrated machine" was "significant[ly] damage[d] due to shipping" to the point of irreparability. (D.E. 27-7 ¶ 7; D.E. 27-9 at 1.) It recommends that the machine be "scrapped." (D.E. 27-9 at 1.) Plaintiff alleges that the cargo "was damaged as a result of its handling during the time it was in the possession of [STG]." (D.E. 38 ¶ 16; D.E. 41 ¶ 16.)

Automec filed its complaint on February 7, 2024. (D.E. 1.) The matter was referred to mediation, which was unsuccessful primarily because of the limitation of liability issue on which STG seeks summary judgment. (D.E. 18; D.E. 20; D.E. 22.) The parties filed their summary judgment motions on March 28, 2025 (D.E. 26; D.E. 27), and oppositions, replies, and statements of material fact were timely filed (D.E. 34; D.E. 35; D.E. 36; D.E. 38; D.E. 39; D.E. 40; D.E. 41; D.E. 42).

II.     **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A dispute that merely involves "some metaphysical doubt as to the material facts" is not genuine. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

On summary judgment, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). If the moving party meets that initial burden, the burden shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)). There is "no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving party so that a reasonable jury could return a verdict in that party's favor." *First Valley Leasing, Inc. v. Goushy*, 795 F. Supp. 693, 696 (D.N.J. 1992).

On summary judgment, the court may not make credibility determinations or weigh the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "[T]he court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a

3

genuine issue for trial … constru[ing] the facts and inferences in the light most favorable to the non-moving party." *Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, Civ. No. 07-321, 2008 WL 2783339, at *3 (D.N.J. July 16, 2008). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Self-serving, conclusory affidavits and testimony, when contradicted by other record evidence, are insufficient to create a genuine dispute of material fact. *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011) (finding "self-serving deposition testimony" which conflicted with deponent's "earlier testimony and … other record evidence … insufficient to raise a genuine issue of material fact"); *Marrin v. Cap. Health Sys., Inc.*, Civ. No. 14-2558, 2017 WL 2369910, at *17–20 (D.N.J. May 31, 2017) (granting summary judgment despite nonmovant's "conclusory" certification contradicted by record evidence).

### III. DISCUSSION

#### A. STG's Motion

STG seeks summary judgment on the issue of limitation of liability. (STG Mot. at 1.) It asserts that its customer, ECU Worldwide, is bound by a limitation of liability, and that because ECU Worldwide was Automec's agent, Automec is also bound by the limitation. (*Id.* at 9–13 (citing *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14 (2004)).) STG contends that ECU Worldwide was bound by a limitation of liability for two reasons: because ECU Worldwide and STG had incorporated STG's terms and conditions, which contain a limitation of liability, into their relationship over their course of dealings, and because ECU Worldwide and STG had negotiated

4

a limitation of liability in 2019.  (*Id.* at 9–10.)  As detailed below, STG fails to offer valid evidence in support of either.

        **i.**        **Regular Course of Dealings**

First, STG asserts that

> through regular and repetitive course of dealings with ECU Worldwide at ports across America (including the [container freight] station here) over the years and prior to the shipment [at issue, STG] and ECU Worldwide incorporated STG's terms and conditions into their business relationship on [container freight station] work assigned to [STG] from ECU Worldwide.

(STG Mot. at 9, 5 ("[t]hrough regular course of dealings with customers … including ECU Worldwide … Defendant provided abundant and conspicuous notice of its contractual terms and conditions by reference to them in its … work documentation.").)  As an example, STG offers that its "outturn report[s]," which it "regularly produces … to all of its customers," state that they are "subject to the general terms and conditions of STG services, which include a limitation of liability" and indicate where the terms and conditions can be found.  (*Id.* at 5–6.)

As evidentiary support, STG cites the declaration of James Napolitano, a senior vice president at STG.  (*Id.* at 9 (citing D.E. 26-1 ¶¶ 9–10 (citing in turn D.E. 26-2 ¶ 6)); D.E. 26-2 ¶ 2.)  That declaration repeats that the two entities' "regular course of dealings … over the course of many years," including regularly issued "outturn report[s]," put ECU Worldwide on notice of STG's terms and conditions.  (D.E. 26-2 ¶ 6.)  It also refers to two exhibits.  The first is Exhibit B, which the declaration describes as "the face of the bill of lading issued by Nordicon AB" but appears in fact to be two copies of one outturn report issued by STG to the customer "ECU NEW JERSEY - IMPORTS" in 2023.  (*Id.*; D.E. 26-4.)  The second is Exhibit C, a copy of STG's terms and conditions.  (D.E. 26-2 ¶ 6; D.E. 26-5.)  In short, STG's evidence to support that it and ECU Worldwide incorporated STG's terms and conditions into their relationship through their course

of dealings "over the years" (STG Mot. at 9) is a statement to that effect by a vice president at STG, a single outturn report issued to "ECU NEW JERSEY - IMPORTS," and a standalone copy of STG's terms and conditions.

This evidence does not establish that ECU Worldwide and STG had a course of dealings, let alone one that lasted years and incorporated STG's terms and conditions. The outturn report establishes—at best—that STG and ECU Worldwide did business once in 2023 and that, in connection with that work, STG issued an outturn report that stated that it was subject to STG's terms and conditions and provided where they could be found. (D.E. 26-4.)[1] Mr. Napolitano's statements are far too vague to meet STG's burden absent other documentary evidence. Summary judgment is the stage to provide the "work documentation" that STG insists "provided abundant and conspicuous notice of its contractual terms and conditions," but STG offers only one example of its dealings with ECU Worldwide. (D.E. 26-2 ¶ 6.) At this stage, Mr. Napolitano's declaration and one outturn report are insufficient to establish a years-long course of dealing. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) (second alteration in original) (quoting *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985)) ("[T]o satisfy the standard for summary judgment 'the affiant must ordinarily set forth facts, rather than opinions or conclusions. An affidavit that is "essentially conclusory" and lacking in specific facts is inadequate to satisfy the movant [or non-movant]'s burden.'"). Given the lack of evidence on the course of dealings, STG's provision of the terms and conditions themselves is irrelevant.

---

[1] If STG had cited the bill of lading as it indicated in its declaration, it would fare no better. Exhibit A to Mr. Napolitano's declaration appears to be that bill of lading, and it does not indicate that STG and ECU Worldwide had any relationship whatsoever. (D.E. 26-3.)

### ii. Negotiated Limitation of Liability

STG also claims that ECU Worldwide was bound by a limitation of liability that it negotiated with STG in 2019. (STG Mot. at 6, 10.) In support, it cites Mr. Napolitano's declaration and, as an exhibit, a copy of an amendment to STG's terms and conditions by ECU Worldwide and STG. (*Id.* at 10 (citing D.E. 26-1 ¶ 12 (citing in turn D.E. 26-2 ¶ 8, D.E. 26-6)).) STG did not produce that exhibit in discovery, however—it was first disclosed as part of STG's motion for partial summary judgment. (D.E. 38 ¶ 17; D.E. 41 ¶ 17.)

Under Rule 37(c)(1), "[i]f a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, …, unless the failure was substantially justified or is harmless." STG has the exhibit at issue in its possession and seeks to use it to support its defense, so STG was required to disclose it under Rule 26. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii), (e)(1)(A). STG's only explanation for failing to provide it in discovery is that "[i]n putting together its supporting declaration, further review of the business records of STG revealed that this 2019 increase was still in place with ECU Worldwide." (D.E. 40 at 7.) STG asserts that it relies on the document for "the benefit of [Automec]" because it imposes a higher limitation of liability than STG's standard terms and conditions. (*Id.*) That explanation does not "substantially justif[y]" STG's failure to provide the document when it discovered it as required by Rule 26(e)(1)(A). *See* Fed. R. Civ. P. 37(c)(1). The failure is also not harmless; the exhibit at issue is STG's only documentary evidence supporting its position that ECU Worldwide was bound by a previously negotiated limitation of liability. Accordingly, STG may not now rely on the exhibit in support of its motion for partial summary judgment.

Without that exhibit, STG's only evidence supporting the previously negotiated limitation of liability is Mr. Napolitano's declaration. As noted above, that is insufficient to show the absence

7

of a genuine dispute of material fact. *Bergen Beverage Distribs. LCC v. E. Distribs., Inc.*, Civ. No. 17-4735, 2022 WL 833373, at *5 (D.N.J. Mar. 21, 2022) ("viewing the evidence in the light most favorable to the nonmoving party" and declining to find that "a single email and self-serving declarations[] are sufficient … on summary judgment"); *Smart Vent, Inc. v. USA Floodair Vents, Ltd.*, 193 F. Supp. 3d 395, 425 (D.N.J. 2016) (denying summary judgment when movant "relie[d] only upon the self-serving declaration of its own Vice-President, who … point[ed] to no empirical evidence (in the form of sales data or otherwise)").

The disputes over both of those facts—whether ECU Worldwide had previously negotiated a limitation of liability with STG, and whether they had a course of dealings sufficient to integrate STG's terms and conditions into their relationship—are genuine. Automec denies these facts (D.E. 39 ¶¶ 9, 12), and STG, offering no adequate evidence in support of its position, has failed to meet its burden.[2] *Celotex*, 477 U.S. at 323. These facts are also material to STG's defense; they are the only bases on which STG argues that ECU Worldwide was subject to a limitation of liability. If ECU Worldwide was not subject to such a limitation, then neither was Automec, and STG is left without a defense. Because these material facts remain in genuine dispute, this Court need not reach the issue of whether a limitation of liability applicable to ECU Worldwide would extend to Automec under *Kirby*, and STG's motion for partial summary judgment must be denied.

### B. Automec's Motion

Automec seeks summary judgment on liability and damages. (Automec Mot. at 1.) It asserts that because STG received undamaged cargo at the seaport, and the cargo was damaged

---

[2] STG argues that Automec "has failed to produce any evidence to dispute the historical course of business conduct between ECU Worldwide and STG … and the incorporation of STG's standard terms and conditions" (D.E. 40 at 7), but it is not Automec's burden to do so. STG, as the movant, "bears the initial responsibility of … identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. STG has not put forth evidence showing a course of dealings, so the burden does not shift to Automec to prove otherwise. *See Jutrowski*, 904 F.3d at 288–89.

after STG transported it to the warehouse and held it, the cargo "indisputably was damaged while in STG's care, custody, and control." (*Id.* at 2–3.) Automec argues that STG is therefore liable on at least one of three causes of action: negligence, breach of contract, and violation of the Carmack Amendment to Interstate Commerce Act, 49 U.S.C. § 14796, *et seq.* (*Id.* at 5.) Automec seeks $112,636.44 in damages. (*Id.* at 3.) STG contends that there are genuine disputes of fact material to liability and damages. (D.E. 35 ("STG Opp.") at 1.) As above, however, STG fails to point to sufficient record evidence to show that the disputes are genuine.

      **i.**      **Damage to the Cargo**

First, STG argues that there is a genuine dispute over whether the cargo was damaged in STG's care. (*Id.* at 4–5.) Automec's support for its contention that the cargo was damaged includes an email from Automec's freight forwarder to Automec's president stating that "damage to the crate" prevented safe collection of the cargo when the trucker arrived at the warehouse to pick it up (D.E. 27-8 at 1), and the surveyor's report indicating that an "uncrated machine" was irreparably damaged and recommending the "machine to be scrapped" (D.E. 27-9). Automec also provides a declaration by its president stating that he investigated the cargo and "determined that it was totally destroyed with no marketable value." (D.E. 27-7 ¶¶ 2, 7.)

STG disputes that this evidence establishes that the cargo was damaged. (STG Opp. at 8.) According to STG, Automec's evidence "contains no statement that the [c]argo itself had been damaged while in or enroute to the STG [warehouse]." (STG Opp. at 4–5, 8 (emphasis added) ("[D]amage to the *crate* holding the [c]argo may have occurred while the [c]argo was at Defendant's … facility but it does not establish that damage to the [c]argo occurred.").) The record contradicts this—the surveyor's report and Automec's president's declaration indicate that the cargo itself was damaged. (D.E. 27-7 ¶ 7; D.E. 27-9.)

9

STG objects to the surveyor's report because "it makes no finding as to which portion of the shipping journey and in whose hands the observed damage occurred." (STG Opp. at 5.) STG received the cargo undamaged at the seaport sometime before July 3, 2023. (D.E. 27-2 ¶ 9; D.E. 34 ¶ 9; STG Opp. at 4 (indicating that STG performed "outturn" of the cargo on July 3, 2023).) STG then transported the cargo to its warehouse. (D.E. 27-2 ¶ 4; D.E. 34 ¶ 4.) Automec's freight forwarder arrived at the warehouse on July 28, 2023 and observed damage to the crate. (D.E. 27-8 at 1.) The surveyor's report was completed two days later, on August 1, 2023. (D.E. 27-9.) Automec's evidence establishes a strong inference that the damage reported by the surveyor occurred when the cargo was under STG's care. STG's arguments that Automec's evidence is insufficiently specific may create "metaphysical doubt," but they do not establish a genuine dispute of fact. *Matsushita*, 475 U.S. at 586.

As for its own evidence, STG offers its outturn report, which "does not contain any notations regarding … any observed damage to the actual cargo." (STG Opp. at 5.) STG's outturn report[3] is indeed silent as to damage, but STG does not explain how that silence supports that the cargo was *not* damaged. Mr. Napolitano states that a carrier who notices damaged cargo "[t]ypically … declines to accept delivery and/or notes whatever is observed in the exchange of transportation document(s) that takes place upon transfer of the cargo," but STG offers no documentary evidence to support that contention. (D.E. 33 ¶ 5.) This statement also does not establish that the outturn report would have noted any damage observed by a carrier because there is no evidence that the outturn report is a transportation document "exchange[d] … upon transfer of the cargo." (*Id.*) The outturn report also appears to be entirely produced and controlled by

---

[3] STG appears to have again mislabeled its exhibits. STG's opposition brief and Mr. Napolitano's accompanying declaration cite "Exhibit A" as the outturn report (D.E. 33 ¶ 5; STG Opp. at 5), but Exhibit A appears to be a waybill issued by Noridcon AB (D.E. 33-1). Exhibit B appears to be two copies of the outturn report. (D.E. 33-2.)

STG, and there is no evidence that the freight forwarder or any other carrier would have had an opportunity to make a notation on it. (D.E. 33-2.) Finally, even if delivery was accepted, it was clearly delayed, and the freight forwarder notified Automec of the damage. (D.E. 27-8 at 1.)

Attempting to demonstrate a genuine dispute over damage to the cargo, STG also asserts that "clean delivery (without any notation of damage)" was "accomplished by STG on the receiving trucker and the [c]argo made its way through to Washington." (STG Opp. at 5.) The only documentary evidence STG cites to support that proposition is again the outturn report, which does not indicate that delivery on the receiving trucker or to Washington was completed. (*See* D.E. 33 ¶ 5; D.E. 33-2.) The cargo's arrival in Washington would not create a genuine dispute over whether it was damaged, and STG offers no evidence to support that "clean delivery" was made to the receiving trucker. Accordingly, there are no genuine disputes over whether the cargo was damaged in STG's care.

   ii.  **Damages**

STG also argues that there are two genuine disputes over material facts relating to damages: one related to mitigation, and one relating to a contractual limitation of liability. (STG Opp. at 10.) The limitation of liability issue is addressed above—STG fails to offer sufficient evidence to establish a genuine dispute over any fact that would support that Automec was bound by a limitation of liability.

On mitigation, STG argues that Automec should have sold the scrap from the damaged machine for value. (*Id.* at 5, 10.) According to STG, the surveyor's report "did not recommend disposal of the machine … but rather that [it] be 'scrapped.'" (*Id.* at 5 (quoting D.E. 27-9).) STG "[p]resum[es]" that the machine "had 'scrap' value and that value would be at issue at trial." (*Id.* at 10.) The only evidence that STG cites in support is the surveyor's report. (*Id.*; D.E. 34 at ¶¶

11

17–18, 20–21.) Automec offers its president's declaration that the cargo was "totally destroyed with no marketable value" and Merriam-Webster Dictionary's definition of "scrap" as "to abandon or get rid of as no longer of enough worth or effectiveness to retain." (D.E. 42 at 5 & n.1.) Automec's president's declaration and the surveyor's report indicate that the machine was destroyed, and STG's presumption is insufficient to create a genuine dispute over what the surveyor meant by "scrapped." (D.E. 27-7 ¶ 7; D.E. 27-9.) Accordingly, there is no genuine issue of material fact relating to damages.

As Automec has offered sufficient evidence that the cargo was damaged under STG's control and of its damages, and STG has failed to show that there is a genuine dispute of material fact as to liability or damages, Automec is entitled to summary judgment.[4]

## IV. CONCLUSION

For the foregoing reasons, STG's motion for partial summary judgment is **DENIED**, and Automec's motion for summary judgment is **GRANTED**. An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: André M. Espinosa, U.S.M.J.
Parties

---

[4] Summary judgment is awarded on Automec's negligence claim, and this Court declines to reach the breach of contract and Carmack Amendment claims.